HON. JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DISABILITY RIGHTS WASHINGTON, a nonprofit membership organization for the federally mandated Protection and Advocacy Systems,<br><br>Plaintiff,<br><br>v.<br><br>TONIK JOSEPH, in her official capacity as Interim Assistant Secretary for the Developmental Disabilities Administration of the Washington Department of Social & Health Services,<br><br>Defendant. | Case No. 23-CV-01668-JNW<br><br><br><br>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR DECLARATORY RELIEF<br><br>NOTE ON MOTION CALENDAR: DECEMBER 22, 2023 |

COMES NOW, Plaintiff, Disability Rights Washington ("DRW") and pursuant to Federal Rule of Civil Procedure, Rule 56, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, hereby requests the Court grant partial summary judgment, declaring that, by law, DRW, as the state's federally designated Protection and Advocacy entity, has the right to access contact details of individuals with developmental disabilities through state service providers. This is to ensure unaccompanied access under regular conditions, aiming to monitor the protection and rights of these individuals.

As grounds, Plaintiff states:

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 1
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

## I. INTRODUCTION AND STATEMENT OF CASE

Plaintiff's authority derives from The Developmental Disability Assistance and Bill of Rights Act (DD Act), which was established to ensure individuals with developmental disabilities and their families actively participate in the design of and have access to essential community services. 42 U.S.C. § 15001(b). For states to receive federal funding under the DD Act, they must institute a protection and advocacy system (P&A),[1] which is not only tasked with safeguarding and advocating for the rights of these individuals, but also empowered to pursue various remedies ensuring their protection. 42 U.S.C. § 15043(a)(1).[2] To achieve this end, the DD Act provides that the P&A system "shall have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual." 42 U.S.C. § 15043 (H).  Implementing regulations of the DD Act further provide that the "P&A system shall have reasonable unaccompanied access to service providers for routine circumstances," for the purpose of "[m]onitoring compliance with respect to the rights and safety of individuals with developmental disabilities."  45 CFR § 1326.27(c) & (c)(2)(ii). This describes, in relevant part, a P&A's "monitoring function." *See Equip for Equal., Inc. v. Ingalls Mem'l Hosp.*, 292 F. Supp.2d 1086, 1094 (N.D. Ill. 2003) ("A P&A system has three primary functions: to investigate, to educate, and to monitor.").

---

[1] *See e.g.*,45 C.F.R. § 1326.19("The term 'State Protection and Advocacy System' is synonymous with the term 'P&A' used elsewhere in this regulation[.]")

[2] The Protection and Advocacy for Individuals with Mental Illness Act (PAIMI Act), 42 U.S.C. § 10801 *et seq.*, and the Protection and Advocacy of Individual Rights Act (PAIR Act), 29 U.S.C. § 794e *et seq.*, also endorse similar frameworks to encompass all individuals with mental illness or disability, collectively referred to as "the P&A Acts." Courts have read the P&A Acts co-extensively. *See Advocacy Inc. v. Tarrant County Hosp. Dist.*, 2001 WL 1297688 *4, fn. 8 (N.D. Texas Oct. 11, 2001); *see also Mississippi P.A. v. Cotton*, 929 F.2d 1054 (5th Cir. 1991)(Fifth Circuit applied the parallel provisions of DD Act and PAIMI Act.); *Iowa Prot. & Advocacy Svcs., Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F.Supp.2d 1150, 1166 (N.D.Iowa 2001); *Robbins v. Budke*, 479 F. Supp. 1051 (D.N.M. 1990). However, this motion is brought pursuant specifically to the DD Act.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 2
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

Defendant Tonik Joseph is sued in her official capacity as Interim Assistant Secretary for the Developmental Disabilities Administration ("DDA") of the Washington Department of Social & Health Services ("DSHS"), which is the state agency responsible for arranging services for eligible individuals with developmental disabilities within the state. Defendant Joseph oversees the administration and operation of DDA. Plaintiff DRW serves as Washington's designated P&A and is empowered with the authorities under the DD Act and its implementing regulations to monitor state agencies serving individuals with disabilities. *See* Declaration of Carrie Basas in Support of Motion for Partial Summary Judgment for Declaratory Relief ("Basas Decl.") ¶ 2, Exh. A. The state is not permitted to interfere with the P&A exercising its federal access authority. *See Mississippi Prot. & Advoc. Sys., Inc. v. Cotten*, 929 F.2d 1054, 1059 (5th Cir. 1991) ("[t]he state cannot satisfy the requirements of the DD [Act] by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority."). DDA does exactly this when it repeatedly denies DRW's request to access critical information related its provision of Remote Support services[3] to individuals with developmental disabilities—blocking DRW's monitoring of how they administer this service.

Within the past year of this case, DRW has requested from DDA, multiple times, contact information for DDA clients receiving Remote Support services. *See* Declaration of Sarah Eaton in Support of Motion for Partial Summary Judgment for Declaratory Relief ("Eaton Decl.") ¶¶ 2, 6,8 Exhs. A,C,E; *see* Declaration of Maxwell Kauffman in Support of Motion for Partial Summary Judgment for Declaratory Relief ("Kauffman Decl.") ¶ 2 Exh. A. In each case, DDA

---

[3] DDA controlling administrative code defines this service as "supervision, coaching, and consultation from a contracted remote support provider to a waiver participant from a distant location." WAC § 388-845-0945.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 3
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

has denied DRW access to contact information preventing DRW from conducting its federally mandated monitoring. *See* Eaton Decl. ¶¶ 3, 9 Exhs. B, F; *see* Kauffman Decl. ¶ 3 Exh. B. By refusing to provide requested contact information, Defendant has interfered with DRW's ability to carry out its federally mandated activities. Pursuant to the plain language of the DD Act and its implementing regulations, DRW must be provided with contact information for individuals receiving services from DDA. DRW has a right to monitor how DDA remote support services are impacting those with developmental disabilities and should not be deterred in its mission to advocate for and ensure the protection of those individuals; nor should DRW be forced to re-litigate this issue every time DDA declines to disclose this information.

Accordingly, the Court should grant plaintiff's motion for partial summary judgment for declaratory relief that DRW has a right to obtain contact information pursuant to its monitoring function.

## II.   FACTS

1. DDA is a state agency in charge of state services program for eligible individuals with developmental disabilities. The statutory objectives of the program are to provide every eligible person with habilitative services suited to the person's needs; provide persons who receive services with the opportunity for integration with persons without disabilities and persons with less acute disabilities to the greatest extent possible; and establish minimum standards for habilitative services in collaboration with various stakeholders. *See* RCW 71A.12.020.

2. Remote Supports is an authorized service of the DDA, which is defined as the "supervision, coaching, and consultation from a contracted remote support provider to a waiver participant from a distant location." WAC § 388-845-0945.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 4
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

3.      DDA plays an integral role in providing Remote Supports to individuals it serves who have developmental disabilities, including case management, assessment, authorization, and records keeping. *See generally* DDA Remote Support Policy 4.28 *available at* https://www.dshs.wa.gov/sites/default/files/DDA/dda/documents/policy/policy4.28.pdf (last visited October 31, 2023); RCW 71A.12.310 (detailing DDA case manager duties and to meet in-person with clients where they live); WAC § 388-828-1080; WAC § 388-845-0955; Defendant's Answer to Complaint, Dkt. #9 at p.3, lines 22-23 ("the website, rules, and bulletin speak for themselves and are the best evidence of their contents and requirements").

4.      DRW is Washington's designated P&A system with the authority to pursue appropriate remedies to protect and advocate for the rights of those with developmental disabilities. Basas Decl. ¶¶ 2-3 Exh. A.; 42 U.S.C. § 15043(a)(1); RCW 71A.10.080 (1) ("The designated agency shall have the authority to pursue legal, administrative, and other appropriate remedies to protect the rights of the developmentally disabled and to investigate allegations of abuse and neglect.").

5.      One of DRW's primary functions is to monitor the care of and advocate on behalf of individuals with mental illness and developmental or other disabilities. *See* 29 U.S.C. § 794e(a)(1), (f); 42 U.S.C. §§ 10801, 15001.

6.      Having access to individuals, their documentation, and the places they reside is crucial for DRW to achieve its intended purpose set by Congress. *See Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc.*, 65 F. Supp.3d 1312, 1324 (S.D. Ala. 2014), *judgment entered,* CIV.A. 13-0519-CG-B, 2014 WL 7146444 (S.D. Ala. Dec. 15, 2014), and *on reconsideration in part,* CVI.A. 13-0519-CG-B, 2015 WL 566946 (S.D. Ala. Feb. 11, 2015).[4]

---

[4] *Citing e.g.,* Examining the Issues Related to the Care and Treatment of the Nation's Institutionalized Mentally Disabled Persons: Joint Hearings Before the Subcomm. on the Handicapped of the S. Comm. on Labor and Human

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 5
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

7. On October 10, 2023, DRW sent a letter to DDA, though its counsel Assistant Attorney General ("AAG") Katheryn Krieger, requesting following for the period of January 1, 2021, to the present date of this letter:

  a. The names, addresses, phone numbers, and email addresses of DDA participants, and of their guardians or legal representatives if applicable, who are currently receiving DDA Remote Supports;

  b. The names, addresses, phone numbers, and email addresses of DDA participants, and of their guardians or legal representatives if applicable, who have requested DDA remote supports and were subsequently denied the service; and

  c. The current participant capacity for DDA's remote services.[5]

*See* Kauffman Decl. ¶ 2 Exh. A; DDA Answer, Dkt. #9 at pp. 3-4, lines 24-25,1-2 ("the letter from DRW speaks for itself and is the best evidence of its contents").

8. In this letter, DRW provided DDA with DRW's statutory and regulatory authority to access this information under the DD Act, pursuant to DRW's monitoring authority, and provided a reasonable disclosure deadline of October 17, 2023. *See* Kauffman Decl. ¶ 2 Exh. A.

9. On October 17, 2023, DDA responded to DRW's request denying access to the information DRW sought and refusing to disclose the contact information for DDA participants. *See* Kauffman Decl. ¶ 3 Exh. B.

---

Resources and the Subcomm. on Labor, Health and Human Servs., Educ. and Related Agencies of the Comm. on Appropriations, 99th Cong., 1st Sess. (1985) (Hr'g No. 99–50, pt. II).

[5] *See* 42 U.S.C. § 15043 (a)(3)(B) ("[T]o the extent that information is available, the State shall provide to the system--information about the adequacy of health care and other services, supports, and assistance that individuals with developmental disabilities who are served through home and community-based waivers[.]")

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 6
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

10. In its response, DDA represents and alleges that:

    a. "DDA does not track who requested [Remote Supports], and therefore DDA does not track who may have been denied the service[;]"

    b. DDA does not know of a capacity limit for the service;

    c. There have only been a total of fifteen (15) participants from January 1, 2021, to October 10, 2023;

    d. DRW lacks access authority because monitoring authority does not extend to monitoring services received by individuals living in private homes;

    e. DDA will not provide the contact information of DDA participants as required under 45 C.F.R. § 1326.26; and

    f. Instead of complying with the regulation, DDA will send a third-party correspondence to DDA participants on behalf of DRW.

*See id.*; *see also* Dkt. #9 at p.4, lines 4-5 ("the response from DDA speaks for itself and is the best evidence of its contents").

11. On July 12, 2022, DRW requested the contact information of DDA Remote Supports recipients, or in the alternative, redacted Individual Instruction Service Plans (IISPs), Incident Reports, and Weekly Reports within a three-month period. *See* Eaton Decl. ¶ 2 Exh. A; *see also* Dkt. #9 at p.4, lines 9-10.

12. On July 15, 2022, DDA denied DRW's request for contact information and instead provided DRW with de-identified weekly reports, de-identified incident reports, and the contract with the program service provider. *See* Eaton Decl. ¶ 3 Exh. B; *see also* Dkt. #9 at p.4, lines 12-13.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 7
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 • Fax: (206) 957-0729

13.      On July 28, 2023, DRW requested the following from DDA:

    a. Redacted Person-Centered Services Plans (PCSPs) for each DDA client on the CORE waiver and Roads to Community Living (RCL) program that are authorized to receive Remote Support services;

    b. De-identified incident reports for any incidents related to Remote Supports, with any incident reports correlated to the coinciding PCSPs since March 1, 2023; and

    c. Alternatively, DRW requested contact information for these clients including their name, telephone number, address, email, and guardian contact information.

*See* Eaton Decl. ¶ 8 Exh. E; *see also* Dkt. #9 at p.4, lines 15-16.

14.      On August 4, 2023, DDA responded by denying DRW's request for contact information and DDA merely offered "general information" about the program as well as to send a third-party correspondence to the service recipients on behalf of DRW. *See* Eaton Decl. ¶ 9 Exh. F; *see also* Dkt. #9 at p.4, lines 18-19.

15.      Based on DRW's verified status as the state's P&A, the laws and policies governing DDA, and existing email correspondence, these facts are undisputed. No reasonable jury would challenge them sufficiently to contest a summary judgment. Plaintiff is entitled to judgment as a matter law as to whether DDA must to disclose to DRW contact information of individuals with developmental disabilities DDA as it serves to effectuate the intent and letter of the DD Act providing DRW with its monitoring authority.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 8
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

## III. PARTIAL SUMMARY JUDGMENT STANDARDS

Partial summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of partial summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24, (1986). "In rendering a partial summary judgment ruling in favor of a movant, a court need not provide relief completely dispositive of individual claims that are part of a larger action. A partial summary judgment ruling may dispose of only a single issue relevant to a claim." 11 James Wm. Moore, et al., Moore's Federal Practice § 56.40[2] (3rd Ed.2007).

Here, as the movant, Plaintiff "bears the initial responsibility of informing the district court of the basis for its motion and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. at 323. "A fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (internal citation omitted). "Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the 'mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient' to avoid judgment." *Wineland v. Air & Liquid Sys. Corp.*, 539 F. Supp. 3d 1149, 1152–53 (W.D. Wash. 2021)(quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts.").

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 9
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

## IV. ARGUMENT

**A. DRW is Entitled to Judgment as a Matter of Law under the Federal Statutes and Regulations Pursuant to which It Seeks Information From DDA**

   *i.   Monitoring is an essential function of DRW*

"The P&A Acts establish distinct functions of a P&A to include investigation, education, and monitoring." *See Equip for Equal., Inc. v. Ingalls Mem'l Hosp.*, 292 F. Supp.2d 1086, 1094 (N.D. Ill. 2003). A P&A's investigation authority under the DD Act pertains to suspected incidences of abuse and neglect of those with developmental disabilities. 42 U.S.C. § 15043 (a)(2)(B). On the other hand, a P&A's monitoring authority extends from its right to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for" individuals with developmental disabilities, and to "have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual." *Id*. at (a)(2)(A)(i), (H); *see also* 80 Fed. Reg. 44804 (final rule guidance from U.S. Department of Health and Human Services (HHS) pertaining to the DD Act explaining that the P&A access authority extends to a P&A's monitoring function, "allow[ing] for access in circumstances beyond where there is a pre-existing substantial allegation of wrongdoing.").

In *Connecticut Off. of Prot. & Advoc. For Persons With Disabilities v. Hartford Bd. of Educ.*, the Second Circuit, interpreting the DD Act, rejected the argument that it confines the P&A to its investigatory purposes, finding:

> [T]he statute provides access to service recipients for both investigatory and monitoring purposes, i.e., to investigate past instances of suspected abuse or neglect and to monitor to ensure current respect for the rights and safety of service recipients. *Id.* § 15043(a)(2)(B), (H). Simply put, the requirement in § 15043(a)(2)(B) that a P & A system have the authority under the Act to investigate specific incidents does not limit a P & A system to that power alone.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 10
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

464 F.3d 229, 242 (2d Cir. 2006).

The Court reasoned that if a P&A's activities derived solely from investigation under § 15043(a)(2)(B), the provision for generalized access to any individual with a disability in a location that provides services, under § 15043(a)(2)(H), would be meaningless. *Id.* at 241. The Court goes further in that "[t]he records-access provision of the DD Act also supports the view that a P&A system has the authority to have physical access to a location and to observe and speak with service-recipients for monitoring purposes." *Hartford*, 464 F.3d at 242. This is because the DD Act permits the viewing of a disabled individual's records if, due to monitoring or other reasons, there's likely evidence of abuse or neglect. *Id.* (quoting 42 U.S.C. § 15043(a)(2)(I)(iii)(II)). Accordingly, as the Second Circuit reasoned, this indicates Congress's intent for P&A systems to proactively monitor, not just react to abuse reports. *Id*.

After being apprised of the Second Circuit's decision, DDA, through its counsel, seemingly finds no merit in that Court's logic. DDA merely asserts without legal support that "DRW's monitoring authority does not extend to monitoring services received by individuals living in private homes." *See* Kauffman Decl. ¶ 3 Exh. B.

DDA then adds that the regulatory authority for routine monitoring "is to *service providers*, not to private residences of individuals with disabilities." *Id.* However, the drafters of the regulation, HHS, read it differently: "The DD Act is clear that P&As have access to people with developmental disabilities, in a location in which services, supports, and other assistance are provided." 80 Fed. Reg. 44801 (quoting 42 U.S.C § 15043 (a)(2)(H) (citation and quotation marks omitted). If the community-based services are provided in the home, then that is the location where P&As may access. HHS explains:

> [T]he law is not explicit about who might be providing such services, intentionally leaving this flexibility to evolve with systems. Twenty years ago it

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 11
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

         was common for an individual to live in a large congregate setting. Now an
         individual is more likely to be living in a small group home, in an adult supported
         living (foster) home, with his or her own family or family member, or
         independently in his or her own home.

*Id.*

While this monitoring authority would encompass monitoring in-home service, it is a core value of DRW to "tak[e] direction from people with disabilities" and DRW's mission is to advance the cause that individuals with disabilities have the right to make choices and decisions based on their own preferences and interests, rather than having choices made for them by others. *See* Disability Rights Washington, *Mission, Vision & Values*, *available at* https://www.disabilityrightswa.org/mission-vision-values/. Accordingly, DRW maintains its duty to "respect individuals with developmental disabilities' privacy interests[.]" 45 CFR § 1326.27(c)(2). Here, DRW never asserted an intention here to barge into service recipients' homes unannounced and uninvited. DRW has sought contact information from DDA as a preliminary means of monitoring the service, by communicating with willing individuals receiving DDA's services. In fact, the regulations explicitly direct P&A staff "honor a [service recipient's] request to terminate an interview. *Id*.

DDA, rather, has asserted that a person receiving in-home services is dispositive of whether DRW can monitor DDA's provision of Remote Supports. *See* Eaton Decl. ¶ 9 Exh F (Citing no authority, AAG Krieger asserts "DRW's Monitoring authority does not extend to monitoring services received by individuals living in private homes.")   DDA's misinterpretation of the DD Act here supports the need for declaratory relief consistent with the plain language of the statute, its regulations, and reasonable interpretations of them.

Furthermore,

         States may not establish a policy or practice, which requires the P&A to…refrain
         from otherwise pursuing a particular course of action designed to remedy a

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 12
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ꞏ Fax: (206) 957-0729

violation of rights… restrict the manner of the P&A's investigation in a way that is inconsistent with the System's required authority under the DD Act; or similarly interfere with the P&A's exercise of such authority.

45 C.F.R. § 1326.21 (c).

Because a P&A investigation may flow from its monitoring function, as recognized by the Second Circuit in *Hartford*, a state agency's restriction of a P&A's monitoring authority may operate to prevent the triggering of an investigation. *See Hartford*, 464 F.3d at 242. Consequently, DDA's ongoing practice of denying DRW contact information may operate to stifle or impede what might later turn into a justified investigation. This is an impermissible end-run around the regulatory prohibition on states interfering with a P&A investigation. *See* 45 C.F.R. § 1326.21 (c).

Ultimately, DRW has a right to access individuals in a location where services are provided and to monitor adherence to the rights and safety of individuals with developmental disabilities—apart from investigatory purposes. DRW is entitled, as a matter of law, to monitor DDA programs serving individuals with disabilities.

      *ii.    DRW has a right to unaccompanied access to DDA's programs and to contact individuals in the location where services are received.*

"Access to service providers and individuals with developmental disabilities shall be extended to all authorized agents of a P&A system." 45 CFR § 1326.27(a); *see also Alabama Disabilities Advoc. Program v. SafetyNet Youthcare, Inc*., 65 F. Supp.3d 1312, 1323 ("The statutes make clear that P&A systems are afforded monitoring and access rights to individuals with mental illness or disability even when they are not residing full-time in a facility."). Also, a "P&A system shall have reasonable unaccompanied access to service providers for routine circumstances," for the purpose of "[m]onitoring compliance with respect to the rights and safety of individuals with developmental disabilities." *See* 45 CFR § 1326.27 (c) & (c)(2)(ii).

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 13
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

Moreover, the regulation makes clear what "unaccompanied access" includes:

> Unaccompanied access to individuals with developmental disabilities including, but not limited to, the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail and in person. This authority shall also include the opportunity to meet, communicate with, or interview any individual with a developmental disability[.]

*Id.* at (d).

Without being able to effectively contact individuals who are receiving or have been denied access to DDA Remote Supports, DRW cannot effectively monitor the adequacy of the service. Without the ability to contact DDA clients, DRW is unable to "[m]onitor… compliance with respect to the rights and safety of individuals with developmental disabilities". *See* 45 CFR § 1326.27 (c)(2)(ii). To give credence to DDA's position would debilitate DRW's monitoring ability and run against the legislative purpose of the DD Act. *See ADAP v. SafetyNet Youthcare, Inc.,* 65 F. Supp. 3d at 1324 ("The three primary types of access-to individuals, their records, and the facilities or residences in which they live-are key to ensuring the P&A system fulfills its Congressional purpose."). Declaratory relief is warranted to resolve DDA's reticence to cooperate with DRW's access authority.

   iii. *DDA's offer of third-party correspondence inappropriately circumvents DRW's authority of unaccompanied and unannounced access to individuals.*

DDA's refusal to provide contact information effectively denies DRW the opportunity to meet and communicate privately with individuals. Pursuant to federal regulations,

> "unaccompanied access to individuals with developmental disabilities includes, but is not limited to, the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail, and in person. This authority shall also include the opportunity to meet, communicate with, or interview any individual with a developmental disability…"

*See* 45 C.F.R. § 1326.27 (d).

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 14
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

DDA's proposal of sending a letter on DRW's behalf does not constitute "unaccompanied access" when it accompanies the communications. Likewise, it cannot be said that this is "unannounced access" when they are they are the announcing DRW's presence. *See ADAP v. SafetyNet Youthcare, Inc.,* 65 F. Supp. 3d 1312, 1325 (construing P&A Acts together: "When a P&A system exercises its monitoring function, reasonable access includes unannounced access.") *see also Equip for Equal., Inc. v. Ingalls Mem'l Hosp.*, 292 F. Supp. 2d 1086, 1101 (N.D. Ill. 2003) (same, applying parallel provisions of the PAIMI Act).

Regardless, "[a] P&A shall not implement a policy or practice [] compromising the authority of the P&A to pursue such remedies through litigation, legal action or other forms of advocacy." 45 C.F.R. § 1326.21 (c). As such, DRW is barred from agreeing to compromise its right to reasonable unaccompanied and unannounced access to individuals by submitting to a practice which contravenes the plain language of the regulation. DDA cannot unilaterally set DRW's monitoring activities on its own terms.

    iv. *There are no confidentiality provisions barring DDA from disclosing to DRW the contact information of DDA recipients.*

DRW must meet strict confidentiality standards to abate the privacy concerns associated with client contact information. *See* 45 C.F.R. § 1326.28. The findings of *Disability Rights Wisconsin, Inc. v. State of Wisconsin Dep't of Pub. Instruction* are illustrative here. In that case, the court determined that both the P&A and state education department were bound by the same confidentiality standards. 463 F.3d 719, 728–30 (7th Cir. 2006). As both entities were required to uphold similar privacy obligations, this situation essentially entails a confidential information transfer between two agencies: one focused on safeguarding individuals with disabilities or mental illness, and the other overseeing public education in Wisconsin. *Id*. Considering the shared responsibility of confidentiality, the P&A holding the information appeared no more

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 15
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

concerning in terms of privacy than when state education department holds it. *Id*; *see also Wis. Coalition for Advocacy v. Czaplewski*, 131 F.Supp.2d 1039, 1052 (E.D.Wis.2001) (noting that nursing home patients would suffer no privacy harm because "federal law requires that WCA, as the Protection & Advocacy System, keep such records confidential"). Analogously, here, DRW's duty to maintain confidentially augurs against concerns that DDA service recipients' privacy would be compromised should DDA disclose contact information.

Furthermore, Courts have determined that the Health Insurance Portability and Accountability Act (HIPAA) does not prevent the P&As from accessing records, as they fit within HIPAA's "authorized by law" exception for disclosure. *See e.g.*, *Prot. & Advoc., Inc. v. Freudenthal*, 412 F.Supp.2d 1211,1216-1220 (D. Wyo. 2006) (holding that neither HIPAA nor the Medicaid Act bars the P&A from accessing records under the P&A Acts); *Ohio Legal Rights Services v. Buckeye Ranch, Inc.*, 365 F.Supp.2d 877, 889 (S.D. Ohio 2005; *see also* 45 C.F.R. § 1326.25 (e) ("The Health Insurance Portability and Accountability Act Privacy Rule permits the disclosure of protected health information (PHI) without the authorization of the individual to a P&A system to the extent that such disclosure is required by law and the disclosure complies with the requirements of that law."); Dep't of Health and Human Services, *Health Information Privacy*, *Frequently Asked Questions*, *at https://www.hhs.gov/hipaa/for-professionals/faq/disclosures-required-by-law/index.html* (last visited October 31, 2023) ("May a covered entity disclose protected health information to a Protection and Advocacy system where the disclosure is required by law? Answer: Yes."). Because it is well settled that HIPAA does not apply to a P&A's lawful activities, Defendant would find no refuge in couching its resistance on HIPAA grounds. *See Disability Rights Wisconsin, Inc.*, 463 F.3d 719, 729–30 (Applying parallel provisions of the PAIMI Act: "The point of the federal P&A statutes is to establish and equip a

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 16
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

specialized agency to look out for individuals with mental illness. Confounding the agency in the name of an illusory concern for privacy defeats that very important goal.").

    *v.*  *Declaratory relief is appropriate.*

Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201, which provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

Declaratory relief is appropriate:

> "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).

*Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir.1986).

For the first prong, declaring DRW's monitoring authority, and DDA's obligation to disclose contact information to effectuate that authority, will clarify the legal relations between DRW and DDA as it relates to DDA's provision of Remote Supports. DDA and DRW will know where they stand as to when DDA must cooperate to give effect to DRW's monitoring authority. For the second prong, a clear declaration will provide closure to the objection that DRW lacks such authority in the first place. In other words, declaratory relief will remove DDA's contentions that DRW cannot exercise its monitoring authority in the context of DDA programs, and that DDA need not provide information necessary for DRW to conduct its monitoring of their programs. Likewise, a declaration to this effect will shape DDA's future conduct when it receives similar requests from DRW. *See Couch v. Morgan Stanley & Co.,* No. 1:14-CV-0010

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 17
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

LJO JLT, 2014 WL 1577463, at *7 (E.D. Cal. Apr. 18, 2014) (Declaratory relief is "meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act.") (quoting *Lawrence v. Kuenhold,* 271 Fed. Appx. 763, 766 (10th Cir.2008).

Lastly, declaratory relief in this case will advance the public interests that underly the DD Act, which recognizes the need for a P&A to effectively use its authority to safeguard and advocate for the rights of individuals with developmental disabilities as a vulnerable population. *See Disability Rights Ohio v. Buckeye Ranch, Inc.*, 375 F. Supp. 3d 873, 897 (S.D. Ohio 2019) (holding that the public interest is served by the fulfillment of a P&A's mandates, as evidenced by Congress's findings regarding the need for the P & A system); *United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985) ("[T[he decision to grant declaratory relief should always be made with reference to the public interest.").

## V. CONCLUSION

For all the foregoing reasons, Defendant must ensure DDA recognizes DRW's legal authority under the P&A Acts to access contact details of its service recipients with developmental disabilities. This allows for DRW to have consistent unaccompanied access to monitor DDA's obligations as to the rights and safety of these individuals.

The Motion for Partial Summary Judgment for Declaratory Relief should be granted.

//
//
//
//
//
//
//
//
//

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 18
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

RESPECTFULLY SUBMITTED November 28, 2023.

**DISABILITY RIGHTS WASHINGTON**

*/s/Maxwell Kauffman*
Maxwell Kauffman, NMBA #150416
315 – 5th Avenue South, Suite 850
Seattle, WA 98104
Tel. (206) 324-1521; Fax (206) 957-0729
Email: Maxk@dr-wa.org

*Pro Hac Vice Counsel for Plaintiff*

*/s/Sarah Eton*
Sarah Eaton, WSBA #46854
315 – 5th Avenue South, Suite 850
Seattle, WA 98104
Tel. (206) 324-1521; Fax (206) 957-0729
Email: sarahe@dr-wa.org

*Attorney for Plaintiff*

Pursuant to LCR 7(e)(6), I certify that this memorandum contains 5,323 words, in compliance with the Local Civil Rules.

*/s/Sarah Eton*
Sarah Eaton, Attorney for Plaintiff

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 19
Case No. 23-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729