The Honorable JAMAL N. WHITEHEAD

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| DISABILITY RIGHTS WASHINGTON, a nonprofit membership organization for the federally mandated Protection and Advocacy Systems,<br><br>    Plaintiff,<br><br>    v.<br><br>TONIK JOSEPH, in her official capacity as Interim Assistant Secretary for the Developmental Disabilities Administration of the Washington Department of Social & Health Services,<br><br>    Defendant. | NO. 23-cv-01668 JNW<br><br>RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>NOTED ON MOTION CALENDAR FOR DECEMBER 22, 2023 |

## I.   INTRODUCTION

It is undisputed that Tonik Joseph, in her official capacity as Interim Assistant Secretary for the Developmental Disabilities Administration (DDA) of the Washington Department of Social and Health Services (DSHS, Defendant) oversees programs and activities covered by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and other privacy laws. It is also undisputed that because DDA is covered by those privacy laws, Defendant is prohibited from releasing protected health information unless specifically mandated by law. While Defendant agrees it may release protected health information to Disability Rights Washington (DRW, Plaintiff) in certain circumstances, and has no qualms doing so if authorized by law,

RESPONSE TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
-- NO. 23-CV-01668

1

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

Defendant disagrees with Plaintiff's interpretation of federal Protection and Advocacy (P&A) system statutes and regulations. Plaintiff argues that it should be able to obtain the identities and contact information of individuals with disabilities receiving Medicaid services for routine, non-investigative, purposes, even when individuals are receiving services in their own private residences rather than facilities or settings operated by service providers, and the service providers are providing services remotely. This protected health information is not Defendant's to disclose, and Defendant cannot disclose it unless unambiguously mandated by law.

## II.   OVERVIEW OF P&A AUTHORITY

Protection & Advocacy systems operate under two main statutory schemes relevant to this case: the Developmental Disabilities Assistance and Bill of Rights (DD Act) and Protection and Advocacy for Individuals with Mental Illness (PAIMI). There is no dispute that all DDA clients are individuals with developmental disabilities under the DD Act, although they may or may not be individuals with mental illness under PAIMI. Both statutory schemes, and their implementing regulations, describe a P&A's authority to:

1. provide advocacy and legal services to qualified individuals with disabilities (*see* 42 U.S.C. § 15043(a)(2)(A); 42 U.S.C. § 10805(a)(1)(B)-(C));
2. monitor settings that provide services to individuals with disabilities (*see* 42 U.S.C. § 15043(a)(2)(H), 45 C.F.R. § 1326.27; 42 U.S.C. § 10805(a)(3); 42 C.F.R. § 51.42); and
3. investigate allegations of abuse and neglect of individuals with disabilities (*see* 42 U.S.C. § 15043(a)(2)(B), (I); 45 C.F.R. § 1326.25; 42 U.S.C. § 10805(a)(1)(A), (a)(4)(B); 42 C.F.R. §51.41(b)).

Under both the DD Act and PAIMI, a P&A must meet certain prerequisites before obtaining records of individuals with disabilities—the P&A is not entitled to information about individuals for any routine purpose. The P&A must (i) have authorization from the individual to obtain their records; or, (ii) if the individual is unable to provide authorization and has no legal representative to provide authorization on their behalf *and* the P&A has received a complaint or has probable cause to believe the person has been subject to abuse or neglect; or (iii) if the individual is unable to provide authorization and does have a legal representative *and* the P&A

RESPONSE TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
-- NO. 23-CV-01668

2

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

has contacted the representative and offered assistance *and* the representative has failed or refused to act on behalf of the individual *and* the P&A has received a complaint or has probable cause to believe the person has been subject to abuse or neglect. 42 U.S.C. § 15043(a)(2)(I); 42 U.S.C. § 10805(a)(4). *See also* 45 C.F.R. § 1326.25; 42 C.F.R. § 51.41. This is referred to as the P&A's *investigative* authority. If a P&A is denied access to records sought pursuant to 45 C.F.R § 1326.25 due to lack of authorization, then the P&A is entitled to receive the name and contact information of the individuals with developmental disabilities and their legal representatives. 45 C.F.R. § 1326.26. DRW has stated that it is not asserting its investigative authority in this case. *See* Dkt. #14-1 at p. 2 ("DRW is not investigating DDA's provision of remote supports for potential abuse and neglect, at this time.").

Further, while § 1326.26 requires P&A systems be given certain contact information when their requests for records under § 1326.25 are denied due to a lack of "authorization", authorization is relevant is when the records sought concern "an individual who is a client of the system, or who has requested assistance from the system, or by such individual's legal guardian, conservator or other legal representative." 45 C.F.R. § 1326.25(a)(1). Not every individual with a disability is a "client" of a P&A system. *See, e.g.*, 45 C.F.R. § 1326.20(d)(2)(x) (prior to redesignation of a state P&A system, newly designated system must give assurance it will continue to serve existing clients of previous P&A); 45 C.F.R. § 1326.21(c) (P&As may develop client acceptance criteria); 45 C.F.R. § 1326.22(c) (identifying P&As must identify if system requests fees or donations from clients during intake process in Annual Statement of Goals and Priorities); 45 C.F.R. § 1326.28 (b)(1) (differentiating between "clients", "individuals who have been provided . . . technical assistance", and "individuals who have received services, supports, or other assistance, and who provided information to the P&A for the record."). Plaintiff has not asserted that recipients of Remote Support are DRW clients as the term is used in this section.

In addition to, and separate from, its investigative authority, a P&A also has *monitoring* authority permitting physical access to settings providing services to individuals with

RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT -- NO. 23-CV-01668

3

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

disabilities. Under PAIMI, a P&A's monitoring authority means it shall "have access to facilities in the State providing care or treatment." 42 U.S.C. § 10805. "Facilities" are defined as:

> any public or private residential setting that provides overnight care accompanied by treatment services. Facilities include, but are not limited to the following: general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units.

42 C.F.R. § 51.2. "Care or Treatment" is also defined in 42 C.F.R. § 51.2.

Under the DD Act, a P&A's monitoring authority means it shall "have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such individual, in order to carry out the purpose of this part." 42 U.S.C. § 15043(a)(2)(H). 45 C.F.R. § 1326.27(c) elaborates on this access to "service providers and individuals with developmental disabilities" by stating that, "In addition to" access for purposes of conducting investigations, "a P&A system shall have reasonable unaccompanied access to service providers for routine circumstances." It goes on to say that "This includes areas which are used by individuals with developmental disabilities and are accessible to individuals with developmental disabilities at reasonable times which at a minimum shall include normal working hours and visiting hours." *Id*. It states that:

> This access is for the purpose of: (i) Providing information, training, and referral for programs…. (ii) Monitoring compliance with respect to the rights and safety of individuals with developmental disabilities; and (iii) Access including, but is not limited to inspecting, viewing, photographing, and video recording all areas of a service provider's premises or under the service provider's supervision or control which are used by individuals with developmental disabilities or are accessible to them.

45 C.F.R. § 1326.27(c)(2)(i)-(iii).

### III.   FACTS

DSHS administers certain Medicaid programs on behalf of the Washington Health Care Authority, including five Home and Community Based Services waivers. Declaration of Leila

RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT -- NO. 23-CV-01668

4

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

Graves (Graves Decl.) at ¶ 3. One of the services offered under the Medicaid waivers is Remote Support. *Id*. at ¶ 4. This service offers "supervision, coaching, and consultation from a contracted remote support provider to a waiver participant from a distant location," in their home or a community-based setting. Wash. Admin. Code 388-845-0945(1). DSHS contracts with providers of Remote Support, but DSHS does not provide the service directly. Graves Decl. at ¶ 5. DSHS case managers, in authorizing payment for the Remote Support service, may review plans developed by the contracted provider and consult with the Medicaid beneficiaries to ensure the service is being provided satisfactorily and in compliance with contractual requirements for reimbursement. *Id*. at ¶ 6.

In July 2022, DRW requested from DSHS the names and contact information for recipients of Distance Based Observation Reporting (DBOR) pursuant to DRW's *monitoring*, rather than *investigative*, authority. Dkt. #13-1. DSHS denied this request explaining that DRW was not entitled to confidential client information under the legal authority cited. Dkt. #13-2. In July 2023, DRW requested from DSHS de-identified service plans and incident reports for recipients of Remote Support services or, alternatively, their names and contact information. Dkt. #13-5. DSHS again denied the request because the legal authority cited by DRW was insufficient to permit disclosure of clients' confidential health information. Dkt. #13-6. DRW renewed its request in October 2023, and DSHS again denied the request. Dkt. #14-1, 14-2. In denying DRW's requests, DSHS offered alternative methods to facilitate connecting DRW with Remote Support recipients that would preserve the recipients' privacy. *Id*.

## IV.   STANDARD OF REVIEW

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A genuine issue of material

RESPONSE TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
-- NO. 23-CV-01668

5

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1  fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving
2  party. *Id.* at 248. The inquiry is "whether the evidence presents a sufficient disagreement to
3  require submission to a jury or whether it is so one-sided that one party must prevail as a matter
4  of law." *Id.* at 243. The party seeking summary judgment bears the initial responsibility of
5  informing the court of the basis for its motion, and demonstrating the absence of a genuine issue
6  of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

V.  ARGUMENT

Plaintiff argues its federal authority to physically monitor provision of services to people with developmental disabilities by service providers grants it both physical access to individuals receiving services in their own, private homes, and unlimited access to the identities and contact information of those individuals. That argument is unsupported by the plain language and context of Plaintiff's authorizing laws and the case law it cites.

HIPAA prohibits Defendant from disclosing protected health information unless specifically authorized by another provision of law. 45 C.F.R. § 160.103; 42 C.F.R. § 164.512. Protected health information includes information held by a covered entity that could be used to identify an individual receiving healthcare. 45 C.F.R. § 160.103. Defendant is also subject to state privacy laws, including Rev. Code Wash. § 74.04.060 and § 70.02.045. It is undisputed that the information Plaintiff seeks constitutes protected health information subject to HIPAA and state confidentiality laws. *See generally* Dkt. #11. Plaintiff is the designated P&A system for Washington State, which gives it authority and access to certain individuals receiving mental health and disability services in the state. 42 U.S.C. § 10805; 42 U.S.C. § 15043. However, that authority and access is not unlimited, but is delineated within several statutes and regulations including 42 U.S.C. § 15043(a)(2)(H) and 45 C.F.R. §§ 1326.25 and 1326.26 (collectively the "authorizing laws"). Defendant disagrees with Plaintiff's interpretation of these authorizing laws, and as a HIPAA-covered entity, Defendant cannot release protected health information absent clear authorization to do so.

RESPONSE TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
-- NO. 23-CV-01668

6

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

The Court should deny Plaintiff's motion because (A) Plaintiff's interpretation requires it to cherry-pick and take out of context language in its authorizing laws that would render meaningless other provisions specifically establishing requirements for P&A access to records; (B) Plaintiff's argument misrepresents the holdings of the cases it cites, and those cases do not support the conclusion that P&A systems have unfettered access to information about individuals with disabilities residing in private residences and not receiving in-person services from a service provider; and (C) Defendant is not a service provider of Remote Support, and by treating it as such, Plaintiff seeks to expand its authority beyond what is contemplated by its authorizing laws to enable it to obtain information about anybody with a disability from any entity with no further prerequisites. Alternatively, to the extent the Court agrees with Plaintiff's interpretation of its authorizing laws, Defendant respectfully requests the Court specifically define the scope of Defendant's obligation to release records to Plaintiff under those authorizing laws and applicable privacy laws to provide Defendant with unambiguous direction in complying with all laws to which it is subject.

**A.      Plaintiff's Interpretation Cherry-Picks and Takes Out of Context Language in Sections of its Authorizing Laws and Would Render Meaningless and Superfluous Laws Specifically Establishing Requirements for P&A Systems' Access to Records**

42 U.S.C. § 15043(a)(2)(I) and 45 C.F.R. §§ 1326.25 and 1326.26 specify circumstances in which P&A systems must be granted access to protected records. These require authorization of the individual whose records they seek for the purpose of providing advocacy services, or a complaint or probable cause to believe the individual has been subject to abuse or neglect, for the purpose of investigating the situation. Plaintiff's argument that 42 U.S.C. § 15043(a)(2)(H) and 45 C.F.R. § 1326.27, the monitoring provisions, entitle it to obtain records without regard for requirements established in the advocacy and investigative provisions would render 45 C.F.R. §§ 1326.25 and 1326.26 and 42 U.S.C. § 15043(a)(2)(I) meaningless and superfluous.

///

RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT -- NO. 23-CV-01668

7

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

A court's "task when interpreting legislation is to give meaning to the words used by Congress; [a court] strive[s] to avoid constructions that render words meaningless." *United States. v. LSL Biotechnologies*, 379 F.3d 672, 679 (9th Cir. 2004). In addition, when Congress provides specific statutory obligations, courts will not read a general provision to expand those specific obligations. *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011) ("Catchall" provision governing Government's trust obligations to tribe did not incorporate common law trust disclosure principles where disclosure obligations were specified by statute). Courts "are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Id.*

Section 1326.25 and 42 U.S.C. § 15043(a)(2)(I) (DRW's investigative authority) establish specific circumstances under which a P&A system shall have access to records of individuals with disabilities. Plaintiff has not asserted that it is seeking records through this lawsuit for any of the specific reasons enumerated in those sections and specifically informed Defendant it is *not* seeking information for any of these reasons. *See* Dkt. #14-1 at p. 2 ("DRW is not investigating DDA's provision of remote supports for potential abuse and neglect, at this time."). Therefore, where Plaintiff does not meet, and has not even asserted, that it may obtain records under its specific enumerated authority, Plaintiff is not entitled to records under a broad construction of its physical access authority in another section of the same statute because such access would render Plaintiff's records access laws meaningless and superfluous.

Certainly, it would be an absurd construction if § 1326.26 granted a P&A system contact information for people with disabilities based on a denial under § 1326.25 where the P&A system's request records request was not made pursuant to § 1326.25. *See also* 42 U.S.C. § 15043(a)(2)(I)(i)–(iii) (identifying specific circumstances under which a P&A system shall have access to records of individuals with developmental disabilities). Plaintiff's interpretation of its authorizing laws would render meaningless and superfluous the sections within those authorizing laws specifically establishing criteria under which P&A systems may access confidential

RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT -- NO. 23-CV-01668

8

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

records. The Court should avoid interpreting those records laws to be meaningless and superfluous, and should deny Plaintiff's motion.

B. **Cases Cited by Plaintiff Do Not Require that P&A Systems Have Unfettered Access to Information About Individuals Residing in Private Residences**

To support its argument that P&A systems must be granted access to the identities and private addresses of people with disabilities based on a P&A's monitoring authority under 45 C.F.R. § 1326.27, Plaintiff primarily relies on *Connecticut Off. of Prot. & Advoc. for Persons with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 242 (2d Cir. 2006) and *Alabama Disabilities Advocacy Program (ADAP) v. SafetyNet Youthcare, Inc*, 65 F. Supp. 3d 1312 (S.D. Alabama 2014) (herein *ADAP*). Dkt. #11 at p. 10–14. Both cases support Defendant's position, not Plaintiff's.

*Hartford* concerned a P&A system's request to access a school "in order to investigate complaints of abuse and neglect at the school, and (2) to obtain a directory of students with contact information for their parents or guardians." *Hartford*, 464 F.3d at 233. While *Hartford* explains that access may involve access to records, all of the discussion in that case centers on access to records at a "facility" or "location that provides services." In fact, the Second Circuit specifically distinguished between requirements for physical access and access to records, discussing "[t]he DD Act and PAIMI distinguish between a P&A system's authority to speak with an individual and its authority to obtain an individual's records." *Id.* at 242.

Furthermore, the Second Circuit in *Hartford* also specifically discussed P&A access to contact information under the records provisions of the P&A system's authorizing laws: "[t]he DD Act, PAIR and PAIMI each permit OPA to access records in certain situations . . . they require, broadly speaking, that a P&A system have access to an individual's records upon the consent of the individual or his or her guardian and in certain emergency situations," or when "the individual's representative fails to act after a P&A system has received contact information for the representative, contacted that person concerning possible abuse or neglect of the

RESPONSE TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
-- NO. 23-CV-01668

9

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

individual." *Id.* at 244 (citing 42 U.S.C. § 15043(a)(2)(I)). Indeed, the Second Circuit highlighted that amicus briefs submitted by the federal Departments of Education and Health and Human Services argued that the "records-access provisions of the P&A Acts 'expressly contemplate that a school or other facility will provide contact information to a P&A *in order to allow the P&A to carry out its responsibility to investigate abuse or neglect.*'" *Id.* (emphasis added). It continued, "[t]he agencies assert that, to the extent that OPA has made the requisite probable cause determinations, OPA has a clear right to contact information for those students' parents or guardians." *Id.* The Second Circuit concluded that,

> [w]e find persuasive the agencies' view that Congress intended a P & A system to be able to obtain the names and contact information for the parents or guardians of students at the Academy. By conditioning access [to records] on the consent of an individual or, if the individual cannot consent, his or her legal guardian or representative, the Acts require that P&A systems contact the guardians of individuals with disabilities or mental illness *if they have the requisite probable cause to believe that abuse or neglect is occurring at the facility*.

*Id.* at 244-45 (emphasis added). *Hartford* concerned physical access to a facility in which a P&A system had cause to believe that abuse or neglect was occurring, and concluded a P&A system should have access to individuals' contact information under such circumstances. It does not conclude that P&A systems have unfettered access to records about people with disabilities absent any of the specific criteria in 42 U.S.C. § 15043(a)(2)(I) and 45 C.F.R. § 1326.25, nor that P&A systems have access to peoples' private residences. In the present case, Plaintiff has specifically stated that it is *not* investigating the Remote Support service at this time and is asserting only its monitoring, and not its investigative, authority. Dkt. #14-1.

In *ADAP*, Alabama's P&A system requested access to a mental health facility licensed by Alabama, which denied the P&A system's requests for physical access to the facility based on direction from Alabama's licensing authority under 45 C.F.R. § 51.42(b).[1] *ADAP*,

---

[1] The Alabama case addressed access to facilities under PAIMI rather than access to service providers under the DD Act, but the requirements are similar although definitions differ. *Compare* 42 U.S.C. § 10805 *and* 42 U.S.C. § 15043.

RESPONSE TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
-- NO. 23-CV-01668

10

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

65 F. Supp. 3d at 1316-23. That case specifically differentiates between authority to obtain records and to access facilities, stating "P&A access to the records of individuals with . . . disabilities is also authorized; and, *in certain situations*, a P&A may access records without consent of either the individual or her legal guardian." *Id.* at 1318 (emphasis added) (citing statutes including 42 U.S.C. § 15043(a)(2)(I)). It further states, "P&A access to individuals and records is available at any time for the purposes of conducting a 'full investigation of an incident of abuse or neglect,'" and that "Where a P&A is not investigating a specific incident, it is entitled to access facilities 'at reasonable times' for the purposes of general advocacy (for example . . . safety monitoring)." *Id*. See also 45 C.F.R. § 51.42; § 51.2 (defining "facilities").  Finally, the Court differentiated between records and physical access cases: "It is also perplexing that DHR thought it best to follow the *Tartwater* case . . . *Tartwater* is a case about records, not facility access or monitoring, and it analyzed whether an anonymous telephone call implying that abuse or neglect may have caused death constituted a 'complaint' and established probable cause for purposes of gaining record access." *ADAP*, 65 F. Supp.3d at 1323-24 (citing *ADAP v. Tartwater*, 97 F.3d 492 (11th Cir. 1996)). *ADAP* does not support Plaintiff's argument that physical access under 45 C.F.R. § 51.42 to facilities where people are receiving mental health services permits a P&A physical access to private residences where people are receiving developmental disabilities services. Nor does *ADAP* support Plaintiff's argument that 45 C.F.R. § 1326.27 grants P&A systems access to the identities and private contact information of people with developmental disabilities—especially where, as here, the service provider furnishes services from a remote location. Plaintiff's argument that it has authority to access information about individuals in private residences under routine circumstances is in conflict with 42 U.S.C. §§ 15043 and 10805, their implementing regulations, and the overall statutory scheme delineating P&A access authority that is contingent on certain prerequisites.

Plaintiff also argues that, by refusing it access to clients' confidential information, Defendant is interfering with Plaintiff's investigatory authority because, Plaintiff says, it might

RESPONSE TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
-- NO. 23-CV-01668

11

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

find something to investigate if it obtains these records. That argument is circular and hypothetical. 42 U.S.C. § 15043(a)(2)(I) and 45 C.F.R. §§ 1326.25 and 1326.26 do not grant access to records to pursue hypothetical investigations or to *search for* probable cause.

And, absent any assertion of its investigative authority, 45 C.F.R. § 1326.26 only requires Defendant to provide the P&A system with a person's contact information when that person is a "client of the system, or . . . has requested assistance from the system," and the P&A's request for that person's records was denied due to lack of that person's authorization. The individuals whose contact information Plaintiff seeks in this case are not Plaintiff's clients. 42 C.F.R. § 1325.25(a)(1); *see supra* Part II. This interpretation of § 1326.26 makes sense within the context of a P&A's physical access authority under 42 U.S.C. § 15043(a)(2)(H), which grants P&A systems physical access to facilities and service providers' premises to conduct monitoring, because it allows a P&A system to obtain contact information for individuals or their guardians from a facility or service provider *after* the P&A system speaks with an individual with a disability during monitoring activities who may not have the capacity to provide that information to a P&A system themselves but has requested assistance from the P&A (or the interaction has otherwise given the P&A probable cause to believe the individual has been subject to abuse or neglect). This interpretation comports exactly with the Second Circuit's discussion of P&A authority to access records in *Hartford*, 464 F.3d at 243–45. *See infra* Part V(B).

Both of the cases Plaintiff relies upon differentiate between physical monitoring access under 42 U.S.C. § 15043(a)(2)(H) and records access under 42 U.S.C. § 15043(a)(2)(I). Neither case demonstrates that P&A systems may obtain information about people with disabilities absent any of the criteria under 42 U.S.C. § 15043(a)(2)(I).

///

///

///

///

RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT -- NO. 23-CV-01668

12

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

**C.  Defendant is Not a Service Provider with Respect to Remote Support; by Treating it as Such, Plaintiff Seeks to Expand its Authority Beyond What is Contemplated by its Authorizing Laws in Order to Obtain Information About any Person With a Disability**

Finally, Plaintiff asserts Defendant is a service provider with regard to Remote Support services. While it is true Defendant provides some services directly to people with developmental disabilities, such as in state-operated residential habilitation centers (*see* Wash. Rev. Code chapter 71A.20), Defendant is a third-party payor for the vast majority of programs it administers, and it functions like an insurance company in operating Medicaid programs by assessing a person's eligibility for covered services and paying for a covered service after it is provided by a contracted provider. *See, generally, e.g.*, Wash. Admin. Code chapters 388-825, 388-828 (discussing the assessment process), and 388-845 (discussing Home and Community Based Services Waivers, including waiver eligibility and service provision). *See also* Graves Decl. Defendant does not provide Remote Support services, at issue in this case; rather "[t]he provider of remote support must be an entity contracted with DDA to provide remote support." Wash. Admin. Code 388-845-0950. Therefore, by definition, Defendant is not a service provider of Remote Support. To call Defendant a "service provider" in this context would mean that agencies administering Medicare and Medicaid, all insurance companies, and any other state or local entities offering public benefits to individuals with disabilities would also be service providers simply by acting as payor.

Plaintiff does not seek to monitor the provision of Remote Support from the service providers' premises, but from the recipients' premises. Plaintiff asks the Court to find that 45 C.F.R. § 1326.27 gives P&A systems authority to access and obtain protected information from Defendant, payor rather than provider of healthcare, about the service recipients and their private residences, without even asserting any of the prerequisites set out in 45 C.F.R. § 1326.25. There is nothing in Plaintiff's authorizing laws indicating that Congress intended for a P&A to

///

RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT -- NO. 23-CV-01668

13

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

monitor private residences or access information held by any third-party payor or public benefit agency, nor do the cases Plaintiff relies upon.

## VI. CONCLUSION

The Court should deny Plaintiff's motion because it is unsupported by the plain language and context of its authorizing laws and applicable case law. The service at issue, by definition, is not provided to Medicaid beneficiaries in anything resembling a facility or service provider's premises as those terms are used in P&A authorizing laws. Rather, Plaintiff seeks to expand its authority to obtain information about any person with a disability anywhere in the state receiving any type of public benefit or service for routine purposes without any assertion of probable cause, and the statutory scheme enacted by Congress does not contemplate any such expansive access for a P&A system. Without an unambiguous legal obligation to disclose protected health information under such circumstances, Defendant believes it would be violating HIPAA and state privacy laws to disclose the information DRW seeks.

To the extent the Court determines Plaintiff is entitled to such information, Defendant respectfully requests the Court clearly articulate Defendant's obligations with respect to Plaintiff's authorizing statutes, HIPAA, and other applicable privacy laws, to ensure Defendant can comply with all applicable requirements.

DATED this 18th day of December, 2023.

ROBERT W. FERGUSON
Attorney General

*s/ Kathryn Krieger*
KATHRYN KRIEGER, WSBA NO. 47037
JOSHUA W. CAMPBELL, WSBA NO. 51251
Assistant Attorney General
Attorney for Defendant
Kathryn.Krieger@atg.wa.gov
Joshua.Campbell@atg.wa.gov
(360) 586-6565

*I certify that this memorandum contains 4,498 words, in compliance with the Local Civil Rules.*

RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT -- NO. 23-CV-01668

14

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

# CERTIFICATE OF SERVICE

I certify that on the date indicated below, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

| | |
|---|---|
| Sarah Eaton<br>Maxwell Kauffman<br>Disability Rights Washington<br>315 – 5th Avenue South, Suite 850<br>Seattle, WA  98104 | Attorney for Plaintiff<br>Email:  sarahe@dr-wa.org<br>maxk@dr.wa.org |

I certify under the penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

EXECUTED this 18th day of December, 2023, at Tumwater, Washington.

s/ Kathryn Krieger
KATHRYN KRIEGER, AAG

RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT -- NO. 23-CV-01668

15

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565