The Honorable JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DISABILITY RIGHTS WASHINGTON, a nonprofit membership organization for the federally mandated Protection and Advocacy Systems,<br><br>Plaintiff,<br><br>v.<br><br>TONIK JOSEPH, in her official capacity as Interim Assistant Secretary for the Developmental Disabilities Administration of the Washington Department of Social & Health Services,<br><br>Defendant. | No. 23-CV-01668-JNW<br><br>PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR DECLARATORY RELIEF |

COMES NOW, Plaintiff, Disability Rights Washington ("DRW") and pursuant to LCR 7(b)(3) hereby submits its Reply to Defendant Tonik Joseph's Response to Plaintiff's Motion for Partial Summary Judgment for Declaratory Relief (hereinafter, the "Motion") Dkt. # 11. Plaintiff states:

**I.   THERE EXISTS NO GENUINE DISPUTE AS TO MATERIAL FACTS AND PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

It is indisputable that, as Washington's designated Protection and Advocacy organization (P&A), Plaintiff DRW's motion for partial summary judgment rests on the Developmental

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 1
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

Disabilities Assistance and Bill of Rights Act of 2000 (DD Act) to ensure individuals with developmental disabilities and their families actively participate in the design of and have access to essential community services. 42 U.S.C. § 15001(b).  Defendant's Response, Dkt, #16, makes frequent reference to the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI Act). Courts have read the DD Act and PAIMI Act co-extensively. *See Advocacy Inc. v. Tarrant County Hosp. Dist.*, 2001 WL 1297688 *4, fn. 8 (N.D. Texas Oct. 11, 2001); *see also Mississippi P.A. v. Cotton*, 929 F.2d 1054 (5th Cir. 1991)(Fifth Circuit applied the parallel provisions of DD Act and PAIMI Act.); *Iowa Prot. & Advocacy Svcs., Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F.Supp.2d 1150, 1166 (N.D.Iowa 2001); Robbins v. Budke, 479 F. Supp. 1051 (D.N.M. 1990). However, it should be noted that Plaintiff brings this case pursuant specifically to the DD Act. *See* Dkt. #11, p. 2, lines 21-23.

To achieve the purpose of the DD Act,

> [T]he statute provides access to *service recipients* for both investigatory and monitoring purposes, i.e., to investigate past instances of suspected abuse or neglect and to monitor to ensure current respect for the rights and safety of service recipients. Id. § 15043(a)(2)(B), (H). Simply put, the requirement in § 15043(a)(2)(B) that a P & A system have the authority under the Act to investigate specific incidents does not limit a P & A system to that power alone.

*See Connecticut Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 242 (2d Cir. 2006) (emphasis added).

Moreover, "[t]he DD Act is clear that P&As have access to people with developmental disabilities, in a location in which services, supports, and other assistance are provided." 80 Fed. Reg. 44801 (final rule guidance from U.S. Department of Health and Human Services (HHS) quoting 42 U.S.C § 15043 (a)(2)(H) (citation and quotation marks omitted)). Further, the "P&A system shall have reasonable unaccompanied access to service providers for routine

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

1  circumstances," for the purpose of "[m]onitoring compliance with respect to the rights and safety

2  of individuals with developmental disabilities." 45 CFR § 1326.27(c) & (c)(2)(ii).

3        Defendant Tonik Joseph, overseeing the administration of DDA, brings no dispute as to

4  the facts that DRW, on multiple occasions, requested contact information of DDA clients either

5  receiving Remote Supports or DDA clients who have requested Remote Supports services.

6  Although these requests were made expressly through DRW's authority to monitor DDA's

7  programs, Defendant does not dispute that DDA has on all accounts denied DRW access to the

8  requested information. *see* DDA Answer, Dkt. #9 at pp. 3-4, lines 24-25,1-19; *see also* Def.

9  Resp. Dkt # 16, p. 5, lines 10-20[1].

10        While DRW's requests for basic contact information are minimally intrusive, DDA's

11  denials effectively thwart DRW's ability to carry out its monitoring function of DDA's Remote

12  Supports program. Without the information needed to contact individuals with developmental

13  disabilities who receive DDA's Remote Support services, DRW cannot have reasonable

14  unaccompanied access to those individuals as provided by the DD Act and its implementing

15  regulations. 45 CFR § 1326.27(c) & (c)(2)(ii). Also, Defendant, in her Response, does not point

16  to a single reason why the public interest is served by denying DRW the ability to monitor

17  DDA's Remote Supports program.

18        Accordingly, the Court should grant Plaintiff DRW's motion for partial summary judgment

19  because Defendant's Response, Dkt. #16, presents no genuine dispute, any material fact and

20  Plaintiff is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

---

[1] Inconsistent with Defendant's Answer, Defendant here appears to mistakenly reference "DSHS," the Washington Department of Social and Health Services, in place of DDA. Although DDA is a department within DSHS, Defendant does not dispute that she is sued in her official capacity as Interim Assistant Secretary for the DDA, the administration that is responsible for the access denials of this case. *See* Kauffman Decl. Correspondence with DDA, Dkt. #14-1, pp.2-6; Dkt. #14-2, pp.1-5.

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

## II. HIPAA IS NOT A BAR TO DRW'S MONITORING ACCESS.

Defendant asserts that the Health Insurance Portability and Accountability Act of 1996 (HIPAA) is an absolute bar to DRW's access authority for the contact information requested in this case. Dkt. # 16, p.14, lines 12-13. However, Plaintiff's Motion cites extensive authority concluding that HIPAA does not prevent the P&As from obtaining contact information, as it fits within HIPAA's "authorized by law" exception for disclosure. *See* Dkt #11, p. 16, lines 7-20; *See e.g.*, *Prot. & Advoc., Inc. v. Freudenthal*, 412 F.Supp.2d 1211,1216-1220 (D. Wyo. 2006) (holding that neither HIPAA nor the Medicaid Act bars the P&A from accessing records under the P&A Acts); *Ohio Legal Rights Services v. Buckeye Ranch, Inc*., 365 F.Supp.2d 877, 889 (S.D. Ohio 2005); *see also* 45 C.F.R. § 1326.25 (e) ("The Health Insurance Portability and Accountability Act Privacy Rule permits the disclosure of protected health information (PHI) without the authorization of the individual to a P&A system to the extent that such disclosure is required by law and the disclosure complies with the requirements of that law."); Dep't of Health and Human Services, Health Information Privacy, Frequently Asked Questions, at https://www.hhs.gov/hipaa/forprofessionals/faq/disclosures-required-by-law/index.html (last visited October 31, 2023) ("May a covered entity disclose protected health information to a Protection and Advocacy system where the disclosure is required by law? Answer: Yes.").

Defendant fails to confront a single one of these authorities, as if Plaintiff never raised them. The only responsive argument Defendant makes, without support, is that "Defendant disagrees with Plaintiff's interpretation of these authorizing laws[.]" *See* Dkt. #16, p. 6, lines 24-25. Defendant cannot evade its obligations under the DD Act by asserting mere disagreement.

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

### III.  DRW'S MONITORING AUTHORITY IS NOT LIMITED TO PHYSICAL FACILITIES.

Although DRW has not expressed an intention to enter to private residences uninvited and unannounced, Defendant bludgeons forth an argument that "P&A systems [should not] have access to peoples' private residences." Dkt. # 16, p. 14, line 19.  Defendant's reading of the DD Act concludes that it only "grants P&A systems physical access to facilities and service providers' premises to conduct monitoring[.]" Dkt. # 16, p.12, line 10-11; *see also id*. at pp. 3-4, lines 25-26, 1-7 (opining on scope of PAIMI monitoring authority). Defendant's reading here is unavailing because the DD Act is clear that P&A access is permitted "in a location in which services, supports, and other assistance are provided," which includes a home. 42 U.S.C § 15043 (a)(2)(H). Further, "reading the facility-access provision as limited to residential facilities is contrary to Congress's clearly expressed intent to provide protection and advocacy services for individuals with mental illness living *in their own homes*." *Connecticut Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 240 (2d Cir. 2006) (citing to PAIMI statute) (emphasis added); *see also id.* at 242 (Second Circuit recognizing that the DD Act of 2000 was promulgated to extend its protections to individuals not living in residential facilities, and HHS's same conclusion is consistent with the plain language of the DD Act.).

### IV.  DDA IS A SERVICE PROVIDER OF REMOTE SUPPORTS.

Defendant argues that it is not subject to P&A monitoring here because it contracts with others for the technology and implementation of Remote Supports. *See* Dkt. #16, p. 13, lines 1-19.  Never mind that Defendant's own declarant affirms that DDA plays an integral role in providing Remote Supports to individuals it serves who have developmental disabilities, including case management, assessment, authorization, and records keeping. *See* Dkt.#17, p. 2,

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

lines 1-16 (DDA "provides a variety of services set out in chapter 388-845 of the Washington Administrative Code (WAC). One of the services available is called Remote Support. This service is defined in WAC 388-845-0945..."; *see also* DDA Remote Support Policy 4.28 available at https://www.dshs.wa.gov/sites/default/files/DDA/dda/documents/policy/policy4.28.pdf (last visited October 31, 2023); RCW 71A.12.310 (detailing DDA case manager duties and to meet in-person with clients where they live); WAC § 388-828-1080; WAC § 388-845-0955; Defendant's Answer to Complaint, Dkt. #9 at p.3, lines 22-23 ("the website, rules, and bulletin speak for themselves and are the best evidence of their contents and requirements").

There is no genuine dispute that DDA provides services related to Remote Supports, even if it contracts out some aspects of service. More importantly, nowhere in the DD Act does it confine itself to an isolated definition of contractors-only monitoring or service type. Rather, the DD Act broadly declares a P&A's access applies to "services, supports, and other assistance are provided" to individuals with developmental disabilities. *See* 42 U.S.C § 15043 (a)(2)(H). Indeed, Defendant cites to no authority for the proposition that only its contractors are subject to the DD Act. Such a limitation would run counter to the Congress' emphasis on a P&A's access to *individuals* with developmental disabilities, rather than defining a limited list of providers by type. As HHS explains:

> To define an exemplary list of ''service providers'' in a regulation would not allow for the broad range of entities currently providing services to be inclusively represented. The DD Act is clear that P&As have access to people with developmental disabilities, ''in a location in which services, supports, and other assistance are provided . . .'' (section 143(a)(2)(H)). However the law is not explicit about who might be providing such services, intentionally leaving this flexibility to evolve with systems.

80 Fed. Reg. 44801.

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

To simply say that a P&A may monitor only some aspects of services to its constituents, but not others, is neither supported by the letter nor the intent of the DD Act. How DDA administers, manages, authorizes, or denies Remote Supports to its clients with developmental disabilities is within the purview of the DD Act because it is a service DDA provides to those individuals—irrespective of who DDA pays to implement the technology.

V. **DEFENDANT'S ARGUMENTS AROUND 45 C.F.R. § 1326.26 AND 45 C.F.R. § 1326.25 ARE MISPLACED AND BEYOND THE SCOPE OF PLAINTIFF'S MOTION.**

Defendant seeks to call into play 45 C.F.R. § 1326.26, which provides:

> If a P&A system's access is denied or delayed beyond the deadlines specified in § 1326.25, the P&A system shall be provided, within one business day after the expiration of such deadline, with a written statement of reasons for the denial or delay. In the case of a denial for alleged lack of authorization, the name, address and telephone number of individuals with developmental disabilities and legal guardians, conservators, or other legal representative will be included in the aforementioned response. *All of the above information shall be provided whether or not the P&A has probable cause to suspect abuse or neglect, or has received a complaint*.

45 C.F.R. § 1326.26 (emphasis added).

Defendant theorizes that this regulation is inapplicable because, as Defendant argues, 45 C.F.R. § 1326.25 refers only to a P&A's access to records under its investigatory function. *See* Dkt. #16, p.3, lines 4-5 9 ("This is referred to as the P&A's investigative authority.") (citing to 45 C.F.R. § 1326.25). This is not the dispositive pitfall as Defendant would have it.

No where has Plaintiffs invoked 45 C.F.R. § 1326.26 as a basis for its Motion or underlying claim. This case is not about Plaintiff's access under its investigatory function, but rather its *monitoring* function. Defendant's argument here is not properly before the Court as a contested or material issue. But to the extent the Court considers it, Defendant supplies an example in the regulatory scheme where contact information must be disclosed regardless of an

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 7
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 • Fax: (206) 957-0729

1  investigatory basis: to be disclosed "whether or not the P&A has probable cause to suspect abuse
2  or neglect or has received a complaint."45 C.F.R. § 1326.26.

3        Ultimately, it is not so remarkable what Defendant says around this issue, but what
4  Defendant fails to say. Defendant pushes the idea that allowing disclosure of the contact
5  information would read absurdity into the DD Act, but Defendant never explains why Congress
6  would intend to exclude a P&A's access to contact information when it is necessary for the P&A
7  to monitor a service. *See* Dkt. #16, p.8, lines 20-24. Nor does Defendant explain how precluding
8  disclosure of contact information here is consistent with the mandatory disclosure requirement of
9  45 C.F.R. § 1326.26—it is not. Moreover, § 1326.26 belies Defendant's argument that disclosing
10 to DRW the contact information of DDA clients would mean "unfettered access" because the
11 regulation mandates it as a minimal disclosure. *See* Dkt. #16, p.9, line 3.

### VI. THE DISCLOSURE TO DRW OF CONTACT INFORMATION OF DDA CLIENTS IS NOT "UNFETTERED ACCESS."

"P & A access is broad, but it is not unfettered." *Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc.*, 65 F. Supp. 3d 1312, 1325 (S.D. Ala. 2014). Defendant does not appear to explain how access to contact information would meet a hyperbolic status of "unfettered access." Dkt. #16, p.9. At the same time, Defendant appears to disregard Plaintiff's point that DRW must meet strict confidentiality standards to abate the privacy concerns associated with client contact information. *See* Dkt. #11, pp.15-16, lines14-23,1-6;45 C.F.R. § 1326.28; *see also Disability Rights Wisconsin, Inc. v. State of Wisconsin Dep't of Pub. Instruction*, 463 F.3d 719, 728–30 (7th Cir. 2006) (finding that because of shared confidentiality obligations, the P&A holding the information appeared no more concerning in terms of privacy than when state education department holds it.); *Wis. Coalition for Advocacy v. Czaplewski*, 131

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 8
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

F.Supp.2d 1039, 1052 (E.D.Wis.2001) (noting that nursing home patients would suffer no privacy harm because "federal law requires that WCA, as the Protection & Advocacy System, keep such records confidential."). The Court should not give weight to Defendant's characterization, or mischaracterization, of DRW's request for contact information.

VII. **DEFENDANT'S ATTACKS ON PLAINTIFF'S CITED AUTHORITIES ARE NOT AVAILING.**

In its Motion, Plaintiff cites to *Connecticut Off. of Prot. & Advoc. For Persons With Disabilities v. Hartford Bd. of Educ*, 464 F.3d 229 (2d Cir. 2006) for the propositions that DRW access authority is not confined to investigations premised on probable cause of abuse and neglect, and for the Second Circuit's reasoning that a state agency's restriction of a P&A's monitoring authority may operate to prevent the triggering of an investigation. *See* Dkt #11, p.10-13. Defendant neither disputes this nor addresses these points made by the Second Circuit. *See* Dkt. #16, p. 9.  Rather, Defendant argues that "all of the discussion in that case centers on access to records at a 'facility' or 'location that provides services.' Dkt. # 16, p. 9, lines 15-16. While this is not accurate by merely looking at Plaintiff's citations to *Hartford*, it is true that *Hartford*'s discussion on a P&A's investigation requirements is not at issue in this case, as this case involves DRW's monitoring authority. Ironically, in trying to assuage the force *Hartford*'s reasoning, Defendant Joseph here commits the same error the Second Circuit pointed out to defendants of that case:

> Defendants conflate § 15043(a)(2)(B) with § 15043(a)(2)(H). The former subsection provides P & A systems access to facilities and permits them to speak with individuals in order to investigate specific incidents of suspected abuse or neglect. The latter subsection provides more generalized access to any individual with a disability in a location that provides services in order to carry out the statutory purpose of protecting the rights of such persons. Defendants' argument that a P & A system has the authority to access a service location under § 15043(a)(2)(H) only for the purpose of investigating a specific incident—a right

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 9
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

conferred by § 15043(a)(2)(B)—would render § 15043(a)(2)(H) meaningless because it would authorize only those activities authorized by subsection (B). We decline to read the statute in a way that would create a redundancy.

*Hartford Bd. of Educ.*, 464 F.3d at 240–41.

Next, Plaintiff cited to *Alabama Disabilities Advocacy Program (ADAP) v. SafetyNet Youthcare (ADAP), Inc,* 65 F. Supp. 3d 1312 (S.D. Alabama 2014) to support three points:

1. "Having access to individuals, their documentation, and the places they reside is crucial for DRW to achieve its intended purpose set by Congress." Dkt. #11, p.6, lines 18-22; See *ADAP v. SafetyNet Youthcare, Inc.*, 65 F. Supp. 3d at 1324 ("The three primary types of access-to individuals, their records, and the facilities or residences in which they live-are key to ensuring the P&A system fulfills its Congressional purpose.");

2. Under the PAIMI and DD Act, "P&A systems are afforded monitoring and access rights to individuals with mental illness or disability even when they are not residing full-time in a facility." See Dkt. # 11, p.13, lines 17-21 (quoting 65 F. Supp.3d at 1323; and

3. DDA's proposal of sending third-party correspondence to its clients conflicts with DRW's authority because "[w]hen a P&A system exercises its monitoring function, reasonable access includes unannounced access." See Dkt. # 11, p.15, lines 2-6 (quoting 65 F. Supp. 3d at 1325).

Again, Defendant does nothing to rebut Plaintiff's *ADAP* citations nor the points to which they support. Instead, in another non-responsive red-herring argument, Defendant argues that *ADAP* discusses a P&A's investigation authority, distinguishing between records and facilities access, and is therefore blanketly not helpful to Plaintiff. See Dkt. #16, p.10-11, lines 22-26,1-24. The-case-says-other-things argument here does not invalidate what *ADAP* also specifically says about the purpose, function, and legislative intent behind a P&A's monitoring authority.

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 10
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

## VIII. DEFENDANT MAKES NO ARGUMENT AS TO HOW THE PUBLIC INTEREST IS SERVED BY BLOCKING DRW'S MONITORING ACCESS.

It bears mention that the Court will be hard-pressed to find in Defendant's Response a public interest justification for their continual denials of contact information for the purpose of DRW's monitoring. Rather, Defendant's central grievance is that "Plaintiff seeks to expand its authority to obtain information about any person with a disability anywhere in the state receiving any type of public benefit or service for routine purposes without any assertion of probable cause[.]" Dkt. 16, p. 15, lines 7-11. Fortunately, the Court does not need to expand anything because the DD Act already provides that DRW shall "have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual." 42 U.S.C § 15043 (a)(2)(H). Also, a "P&A system shall have reasonable unaccompanied access to service providers for routine circumstances," for the purpose of "[m]onitoring compliance with respect to the rights and safety of individuals with developmental disabilities." 45 CFR § 1326.27(c) & (c)(2)(ii).  To achieve reasonable unaccompanied access, DRW needs the basic information necessary to initiate contact with DDA clients—their contact information.

To reiterate, DRW never asserted an intention here to barge into service recipients' homes unannounced and uninvited. DRW has sought contact information from DDA as a preliminary means of monitoring the service, by communicating with willing individuals receiving DDA's services. But with Defendant thwarting DRW's ability to effectively monitor how they treat their clients, and shrouding their provision of Remote Supports, the public interest and the interest of DDA clients are not served—nor is the DD Act. *See Mississippi Prot. & Advoc. Sys., Inc. v. Cotten*, 929 F.2d 1054, 1059 (5th Cir. 1991) ("[t]he state cannot satisfy the requirements of the

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 11
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 • Fax: (206) 957-0729

DD [Act] by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority.").

## IX. CONCLUSION

For all the foregoing reasons, and for the reason that Defendant's Response, Dkt. #16, does not otherwise provide an objection to the use of declaratory relief in this case, the Motion for Partial Summary Judgment for Declaratory Relief should be granted.

RESPECTFULLY SUBMITTED this 21st day of December, 2023.

**DISABILITY RIGHTS WASHINGTON**

/s/ Maxwell Kauffman
Maxwell Kauffman, NMBA #150416
315 – 5th Avenue South, Suite 850
Seattle, WA 98104
Tel. (206) 324-1521; Fax (206) 957-0729
Email: Maxk@dr-wa.org

*Pro Hac Vice Counsel for Plaintiff*

/s/ Sarah Eaton
Sarah Eaton, WSBA #46854
315 – 5th Avenue South, Suite 850
Seattle, WA 98104
Tel. (206) 324-1521; Fax (206) 957-0729
Email: sarahe@dr-wa.org

*Attorney for Plaintiff*

Pursuant to LCR 7(e)(6), I certify that this memorandum contains 3,334 words, in compliance with the Local Civil Rules.

/s/ Sarah Eaton
Sarah Eaton, *Attorney for Plaintiff*

REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 12
No. 23-CV-01668-JNW

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729