UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DISABILITY RIGHTS WASHINGTON, a nonprofit membership organization for the federally mandated Protection and Advocacy Systems,<br><br>                Plaintiff,<br><br>    v.<br><br>TONIK JOSEPH, in her official capacity as Interim Assistant Secretary for the Developmental Disabilities Administration of the Washington Department of Social & Health Services,<br><br>                Defendant. | CASE NO. 23-cv-01668<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## 1.  INTRODUCTION

Plaintiff Disability Rights Washington (DRW) moves for partial summary judgment on its claim for declaratory relief. DRW asks the Court to find that it has a right to obtain the identities and contact information of disabled individuals receiving Remote Support services—a state-administered program designed to help people with developmental disabilities— under the Developmental Disability

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

Assistance and Bill of Rights Act ("DD Act") and its implementing regulations. Upon review of the briefing, the record, and the law, the Court is fully informed and DENIES DRW's motion, Dkt. No. 11. While the material facts are undisputed, the DD Act does not authorize DRW to access the requested personal information under the circumstances presented here.

## 2.  BACKGROUND

Congress enacted the DD Act to ensure "that individuals with developmental disabilities and their families participate in the design of and have access to needed community services" and other forms of assistance. 42 U.S.C. § 15001(b). For a state to receive federal funding under the DD Act, it must have a Protection and Advocacy (P&A) system "to protect and advocate the rights of individuals with developmental disabilities." 42 U.S.C. § 15043(a)(1). The Protection and Advocacy for Individuals with Mental Illness Act (PAIMI), 42 U.S.C. § 10801 et seq., and the Protection and Advocacy of Individual Rights Act (PAIR), 29 U.S.C. § 794e et seq., contain similar requirements.

DRW is the designated P&A agency for Washington state. In this role, DRW supports individuals with developmental disabilities by providing them advocacy and legal services, monitoring their service providers, and investigating allegations of abuse and neglect. The DD Act grants DRW access to the records of developmentally disabled individuals in some cases.

In July 2022, DRW sent a letter to the Washington Department of Social & Health Services' Developmental Disabilities Administration (DDA) requesting the names and contact information, among other things, of Remote Support recipients

"and/or [their] guardians." Dkt. 13-1 at 1. DRW requested the information under its

monitoring authority to see "how [Remote Support] is being provided in respect to

the rights and safety of … [DDA] service recipients." Dkt. No. 13-1 at 2 (internal

quotations omitted).

Remote Support is a Medicaid program administered by DDA,[1] offering

"supervision, coaching, and consultation from a contracted remote support provider

. . . from a distant location." WAC 388-845-0945(1). Remote Support recipients can

access the service from their homes or a community-based setting. *Id*. DDA

contracts with Remote Support providers and authorizes Medicaid payment for such

services, but DDA does not provide the services directly to recipients. Dkt. No. 17 ¶

5.

DDA declined to provide DRW with the information requested because,

according to DDA, the DD Act does not authorize DRW to access personal

information unless DRW is investigating the Remote Support program. Dkt. No. 13-

2. *Id*.

In July 2023, DRW requested "de-identified" service plans for each individual

authorized to receive Remote Support services from DDA, as well as any incident

reports regarding those individuals. Dkt. No. 13-5. DRW sought, in the alternative,

the names, addresses, and contact information of Remote Support recipients and

their legal guardians. *Id*. In response, DDA claimed there was "no meaningful way

---

[1] This program has also been known as Distance Based Observation and Reporting (DBOR). *See* WAC 388-845-2019(2)(g)(vii) ("What modifications to waiver services apply during the COVID-19 outbreak?").

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

1    to redact" or "de-identify" the personal service plans, and so it refused to provide

2    them. DDA informed DRW, however, that it had run a search for incident reports

3    and had found none. Dkt. No. 13-6 at 2. And DDA once again denied DRW's request

4    for recipient contact information, stating it could not disclose protected health

5    information under the DD ACT unless DRW was investigating the Remote Support

6    program. *Id.*

7        DRW renewed its request in October 2023. Dkt. No. 14-1 at 2. This time, it

8    also requested the names and contact information of individuals who were denied

9    Remote Support services. *Id.* DRW clarified that it was "not investigating [DDA's]

10   provision of remote supports for potential abuse and neglect[.]" *Id.* at 2. Again, DDA

11   denied the request. Dkt. No. 14-2. It also informed DRW that it "does not track who

12   requested [Remote Supports]," and thus had no information about who was denied

13   Remote Support services. *Id.*

14       This lawsuit followed. DRW requests injunctive relief and declaratory relief

15   as follows:

16       Declare in favor of Plaintiff … that Defendants violated the DD Act, by
         refusing to provide DRW with the names and contact information of
17       DDA participants who are currently receiving DDA remote supports and
         of those who have requested DDA remote supports and were
18       subsequently denied the service for the period of January 1, 2021, to
         October 10, 2023.

19   Dkt. No. 1 at 16–17.

20       DRW now seeks partial summary judgment, asking the Court to find that

21   DRW has the right to access contact details of individuals with developmental

22   disabilities through state service providers under its monitoring authority found in

23

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

the DD Act. Dkt. No. 11-1 at 1 (citing 42 U.S.C. § 15043(H) and 45 C.F.R.
§ 1326.27(c), (c)(2)(ii)). It defines the requested contact details as "the names,
address, phone numbers, and email addresses of such individuals, and of their
guardians or legal representatives, if applicable." *Id.*

## 3.  DISCUSSION

### 3.1  Legal standard.

#### 3.1.1  Summary judgment.

Summary judgment is appropriate if there is no genuine dispute as to any
material fact and the moving party is entitled to judgment as a matter of law. Fed.
R. Civ. P. 56(a). To succeed on the motion, the moving party must first show that no
issues of material fact exist, referring to portions of "the pleadings, depositions,
answers to interrogatories, [] admissions on file, [and] [] affidavits" to support its
argument. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R.
Civ. P. 56(c)). If the moving party meets its initial burden of demonstrating the
absence of a genuine issue of material fact, then the nonmoving party must present
"specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v.
Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009). Whether a fact is material
depends on the substantive law governing the claim. *Suever v. Connell*, 579 F.3d
1047, 1056 (9th Cir. 2009). On summary judgment, the Court considers all facts in
the light most favorable to the nonmoving party and draws all reasonable
inferences in their favor. *Earl v. Nielsen Media Rsch., Inc. et al.*, 658 F.3d 1108,
1112 (9th Cir. 2011).

### 3.1.2      Statutory interpretation.

"The preeminent canon of statutory construction requires [courts] to presume that the legislature says in a statute what it means and means in a statue what it says." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (quotation omitted). Thus, the court's analysis "begins with the statutory text, and ends there as well if the text is unambiguous." *Id*. (quotation omitted).

If the text is ambiguous, courts must turn to other canons of statutory construction. When construing statutory language, courts "must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Rodriguez v. Sony*, 801 F.3d 1045, 1051 (9th Cir. 2015) (quotation omitted). "[P]articular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme." *Id*. (quotation omitted). The rules of statutory interpretation apply equally to regulations that carry the force of law. *Aguayo v. U.S. Bank*, 653 F.3d 912, 925 (9th Cir. 2011).

### 3.2      DRW's monitoring authority does not grant it unfettered access to the records and contact information of disabled individuals.

DRW, as a P&A agency, has "three primary functions: to investigate, to educate, and to monitor." *Equip for Equal., Inc. v. Ingalls Mem'l Hosp.*, 292 F. Supp. 2d 1086, 1094 (N.D. Ill. 2003). The DD Act lays out rules circumscribing DRW's authority under each function, including when and how DRW may access facilities and service providers and collect personal records and information from developmentally disabled persons. *See e.g.*, 42 U.S.C. § 15043(a)(2)(I), (J), (H). Since

1

2

DRW has disavowed any investigative purpose in seeking the names and contact information of Remote Support recipients under its *investigative* authority, the

3

Court must decide whether it may do so under its *monitoring* authority.[2]

4

DRW maintains that the DD Act at 42 U.S.C. § 15043(a)(2)(H) ("Subsection

5

(a)(2)(H)") and its implementing regulation at 45 C.F.R. § 1326.27(c) authorize

6

access to the requested information. For the reasons below, the Court rejects DRW's

7

arguments and finds that neither provision authorizes the access sought.  The

8

Court addresses Subsection (a)(2)(H) and 45 C.F.R. § 1326.27(c) in turn.

9

10

### 3.2.1    The plain language of Subsection (a)(2)(H) does not grant DRW access to the records or contact information of individuals receiving Remote Support services.

11

Subsection (a)(2)(H) grants P&A systems access to individuals with

12

developmental disabilities. It states that P&A systems like DRW "shall":

13

14

> have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual, in order to carry out the purpose of this part.

15

16

42 U.S.C. § 15043(a)(2)(H).

17

DRW claims that this provision requires DDA to disclose personal

18

information related to Remote Support recipients, people who were denied Remote

19

Support services, and any legal guardians. But the express statutory language of

20

Subsection (a)(2)(H) does not support DRW's interpretation, as it does not require

21

22

23

---

[2] DRW confirms this fact in its reply brief, stating, "This case is not about Plaintiff's access under its investigatory function, but rather its *monitoring* function." Dkt. No. 18 at 7 (emphasis in original).

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

service providers to disclose the private information of people with developmental disabilities. *See id*. Rather, it authorizes access "at reasonable times" to individuals with developmental disabilities in "location[s]" where they receive services. *Id*.; *see also Conn. Office of Prot. & Advoc. for Persons with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 241 (2d Cir. 2006) (Subsection (a)(2)(H) "provides more generalized access to any individual with a disability *in a location that provides services*.") (emphasis added). The language does not require service providers to disclose personal information. Indeed, *Hartford Board of Education*, the case mainly relied upon by DRW, notes that *no DD Act provision* expressly requires a service provider to produce a list of service recipients with their contact information and that of their legal guardians. *See id*. at 244.

Further, DRW's request for declaratory relief exceeds the scope of Subsection (a)(2)(H), as conveyed by the Subsection's plain language. Subsection (a)(2)(H) only authorizes "access" to individuals with developmental disabilities who receive "services, supports, and other assistance" at a given location. 42 U.S.C. § 15043(a)(2)(H). But DRW asks the Court to declare that Subsection (a)(2)(H) entitles it to obtain the contact information of any "individual[ ] with developmental disabilities" through "state service providers." Dkt. 11-1 at 1 (DRW's proposed order). This is a step beyond what the statute contemplates. Likewise, DRW argues that Subsection (a)(2)(H) entitles it to the names and contact information of individuals who were denied Remote Support services and thus did not receive them. *See* Dkt. 1 at 16. DRW also argues that it is entitled to the names and personal contact information of legal representatives for individuals with

developmental disabilities. Dkt. 11-1 at 2. These arguments fail because, as explained, Subsection (a)(2)(H) only authorizes access to a defined group of individuals that does not include these categories of persons. DRW's reliance on this subsection for broader access is unpersuasive.

### 3.2.2    Construing the DD Act as a whole confirms the Court's plain-language reading of Subsection (a)(2)(H).

Setting aside the plain meaning of Subsection (a)(2)(H), DRW's reading of the statute fails because it impermissibly conflicts with other provisions of the DD Act that expressly govern records disclosures. DRW's reading of Subsection (a)(2)(H) would inexplicably render those neighboring records-governing provisions meaningless when individuals with developmental disabilities receive services at home. *See* 42 U.S.C. § 15043(a)(2)(I), (J); *c.f. Hartford Bd. of Educ.*, 464 F.3d at 241 (rejecting interpretation of 42 U.S.C. § 15043(a)(2)(B) that would render 42 U.S.C. § 15043(a)(2)(H) meaningless). In general, these neighboring provisions authorize P&A agency access to records during certain investigations and emergencies, as well as through consent from the individual or their legal guardian. 42 U.S.C. § 15043(a)(2)(B), (I)–(J). Outside of these specific situations, a P&A system must, among other things, find "probable cause to believe that [an] individual has been subject to abuse or neglect" before accessing that individual's records. 42 U.S.C. § 15043(a)(2)(I)(ii)(III), (iii)(II). Unlike the generalized provision governing access to individuals in locations where they receive services (set out in Subsection (a)(2)(H)), the provisions governing access to records are "very explicit about what type of authorization is required for a P&A system to view an individual's records: they

detail from whom a P&A system must have authority to access records and when prior consent is necessary." *Hartford Bd. of Educ.*, 464 F.3d at 242–3; *see also id.* at 242 (The DD Act "distinguish[es] between a P&A system's authority to speak with an individual [at a location where they receive services] and its authority to obtain an individual's records.").

The specific statutory requirements governing P&A access to individual records would make little sense if DRW's broad interpretation of Subsection (a)(2)(H) were correct. Indeed, P&A systems could circumvent the DD Act's requirements for records access simply by invoking their Subsection-(a)(2)(H) monitoring authority. Accordingly, the Court finds that DRW's proposed interpretation of Subsection (a)(2)(H) cannot be harmonized with the rest of the statute and rejects it.

In the same vein, allowing P&A systems to have such broad access to contact information under Subsection (a)(2)(H) would conflict with existing precedent interpreting Subsection (a)(2)(I)(iii), which permits access to a legal representative's contact information *only if* the P&A system has probable cause to believe that the represented individual with developmental disabilities "has been subject to abuse or neglect." *Disability L. Ctr. Of Alaska, Inc.*, 581 F.3d at 939 (finding P&A system entitled to contact information for guardians of students with intensive needs because it had probable cause to believe that those students "may have been subject to abuse or neglect"). Stated differently, if a P&A system cannot make the requisite probable cause finding, then it lacks authorization to access legal representatives' contact information. *Id.*; *see also Disability Rts. Wash. v. Rolfe*, No. 3:12–cv–05004–

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

RBL, 2012 WL 1409628, at *3–4 (W.D. Wash. Apr. 12, 2012) (finding "DRW's request to compel disclosure of personal [contact] information [was] unlikely to prevail on the merits" because DRW did not demonstrate probable cause under the applicable DD Act provision); *Wash. Prot. & Advoc. Sys.*, No. CV03-5062 FDB, Dkt. No. 25 (finding P&A system's request for the contact information of "all disabled students participating" in the program was unlikely to succeed on the merits for lack of probable cause). Reading Subsection (a)(2)(H) as DRW suggests would render the probable-cause finding requirement meaningless if P&A systems could access the same information at any time merely by invoking their monitoring authority. *See Cal. v. Azar*, 911 F.3d 558, 569 (9th Cir. 2018) (Courts should make "every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").

For these reasons, the Court rejects DRW's interpretation of Subsection (a)(2)(H). Given the discussion above, the Court need not decide whether a service recipient's private home is a "location in which services, supports, and other assistance are provided" to that individual under Subsection (a)(2)(H).

### 3.2.3    The plain language of 45 C.F.R. § 1326.27(c) does not grant DRW access to the records or contact information of individuals receiving Remote Support services.

DRW also maintains that 45 C.F.R. § 1326.27(c) requires DDA to produce the requested information. It states:

[A] P&A system shall have reasonable unaccompanied access to service providers for routine circumstances. This includes areas which are used by individuals with developmental disabilities and are accessible to individuals with developmental disabilities at reasonable times, which

> at a minimum shall include normal working hours and visiting hours. A P&A also shall be permitted to attend treatment planning meetings concerning individuals with developmental disabilities with the consent of the individual or his or her guardian . . . .

45 C.F.R. § 1326.27(c).

This regulation is inapposite. Its plain language entitles DRW to have "access to service providers"—that is, those who *provide services.* By its own terms, this regulation obviously contemplates a P&A system's access to service provider facilities, explaining that access to those facilities includes access to patients and clients "at reasonable times," including "normal working hours and visiting hours." *Id.*

Nothing in the regulation's language suggests that service providers must provide access to service *recipients* who are not present at their facilities. Indeed, the same regulation later defines "access" as "[a]cess including . . . all areas of a service provider's premises or under the service provider's supervision or control which are used by individuals with developmental disabilities or are accessible to them." 45 C.F.R. § 1326.27(c)(2)(iii). Here, there is no contention that the online service providers have supervision or control over the service recipients' homes. Thus, the Court rejects DRW's argument. The Court ends its analysis here, as the regulation is unambiguous. *See Satterfield*, 569 F.3d at 951.

The Court notes that the outcome might be different in a case in which the service provider has some level of access to or control over the service recipient's private home. But neither side suggests that those are the facts here.

**3.3   The Court need not decide whether DDA is a "service provider" under the DD Act.**

DDA argues that it is not a service provider for the Remote Support program. Dkt. No. 16 at 13. Because the Court has concluded that DRW is not entitled to the records it requested on other grounds, the Court does not address whether DDA is a service provider under these facts.

## 4.   CONCLUSION

The DD Act empowers P&A systems like DRW to collect individuals' private information under certain circumstances. Those circumstances do not apply here. Accordingly, DRW's Motion for Partial Summary Judgment, Dkt. No. 11, is DENIED. The Parties will submit a Joint Status Report by October 14, 2024, indicating whether any additional discovery or motions practice is necessary before trial.

Dated this 30th day of September, 2024.

Jamal N. Whitehead
United States District Judge